**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| AARON JENSEN, | **MEMORANDUM DECISION** |
| Plaintiff, | **AND ORDER** |
| vs. | |
| WEST JORDAN CITY, a Utah municipal | Case No.  2:12-CV-736-DAK |
| corporation, and ROBERT SHOBER, in | |
| his official capacity; | Judge Dale A. Kimball |
| Defendants. | |

This matter is before the court on the Plaintiff Aaron Jensen's Motion for Summary Judgment and on Defendants West Jordan City and Robert Shober's Motion for Summary Judgment. Mr. Jensen's motion seeks summary judgment on four of his claims. Defendants' motion seeks summary judgment on all of Mr. Jensen's claims. A hearing on the matter was held on July 19, 2016. At the hearing, Mr. Jensen was represented by April Hollingsworth, Ashley Leonard, and Brenda Beaton. Defendants were represented by Judith Wolferts and Paul Dodd. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Aaron Jensen was a law enforcement officer for Defendant West Jordan City ("WJC") before resigning as part of a settlement agreement, which the parties entered into to

resolve a sexual harassment complaint filed by Mr. Jensen ("Settlement Agreement"). Defendant Lieutenant Robert Shober was Mr. Jensen's direct supervisor at the WJC police department.

Mr. Jensen was hired as a police officer for WJC in 1996. In August or September 2008, WJC began an Internal Investigation ("IA") of Mr. Jensen's reports after a routine audit revealed issues or concerns with whether his reports were completed and closed out correctly. Around that same time, Mr. Jensen alleges that he filed multiple informal complaints that he was subjected to sexual harassment as a WJC employee, the last of which was filed on September 16, 2008. On October 21, 2008, Mr. Jensen was placed on paid administrative leave, so WJC could investigate his internal sexual harassment complaints. Before being put on leave, Mr. Jensen cleaned out his personal belongings in his office and never returned to his office.

Initially the IA into Mr. Jensen's reports was being conducted by Captain Dan Gallagher. Because Mr. Jensen's sexual harassments complaints included conduct by Captain Gallagher, the IA was reassigned to Captain Gary Cox on October 22, 2008. On November 5, 2008, the City Manager and City Attorney for WJC informed Captain Cox that the case would be transferred to the Attorney General's Office ("AG"). On November 17, 2008, WJC turned over the IA to the AG. Upon agreeing to take over the IA, the AG informed WJC that the AG would determine how the investigation would proceed and that WJC would be required to go along with any recommendations that it made. When the AG first took over the IA, it continued to treat it as an internal, and not a criminal, investigation. Captain Cox continued to serve as the liaison between WJC and the AG. During its investigation, the AG found what it considered to be evidence of potential crimes, including falsifying reports, detaining individuals unlawfully, destroying or concealing evidence, and keeping WJC money.

If the AG finds criminal conduct when investigating police misconduct that does not cross city or county lines, the AG takes the case to the presiding district or county attorney. In accordance with that policy, upon finding evidence of potential crimes, the AG sent the investigation to the Salt Lake County District Attorney's Office ("SLCO DA"). Captain Dean Waters from WJC was assigned to act as a liaison to SLCO DA during the investigation. After an investigation, SLCO DA decided to prosecute the case.

On January 8, 2009, Mr. Jensen filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Utah Antidiscrimination & Labor Division ("UALD") alleging sexual harassment and gender discrimination in employment.

Beginning in March and continuing into April 2009, Jeff Robinson, the WJC attorney, negotiated and drafted the Settlement Agreement with Mr. Jensen's attorney. The parties signed the Settlement Agreement on April 29, 2009, at which point Mr. Jensen's resignation became effective. As part of the Settlement Agreement, Mr. Jensen agreed to resign his employment with WJC and agreed not to institute a lawsuit based on his previously filed Charge of Discrimination. WJC agreed to pay Mr. Jensen $80,000 and to provide Mr. Jensen with a neutral reference. The Settlement Agreement also included a provision that required both parties to sign a Negotiated Settlement Agreement required by UALD. The terms of the Negotiated Settlement Agreement prohibit WJC from retaliating against Mr. Jensen and require WJC to abide by federal law.

On the day that Mr. Jensen's resignation became effective, Reed Motzkus and Burdette Shumway, both co-workers of Mr. Jensen at WJC, cleaned out Mr. Jensen's former office and found an envelope with copies of two drivers' licenses and about 14 balloons of heroin. Mr. Motzkus determined that the documents and items no longer had evidentiary value and booked the property in as evidence to be destroyed. Mr. Motzkus told Lt. Shober what he had found. In

an attempt to determine which case the drivers' licenses and balloons belonged with, Lt. Shober contacted the individuals on the drivers' licenses and the Murray Police Department, who participated in the traffic stop where the documents and items were obtained. During those discussions, Lt. Shober learned that, in addition to the balloons of heroin, Mr. Jensen took money from the individuals during the traffic stop. Lt. Shober did not find any record of Mr. Jensen dealing with the individuals or of any money entries. Lt. Shober eventually gave the information he had gathered to Captain Gary Cox, an employee of WJC, who gave the evidence to the SLCO DA, who had taken over the criminal investigation into Mr. Jensen's conduct.

On June 15, 2009, another balloon of heroin was found in the vacant office by Sergeant Danny Benzon, who replaced Mr. Jensen as narcotics sergeant, while he was moving into Mr. Jensen's former office. Upon learning about the balloon of heroin, Lt. Shober instructed Sgt. Benzon to book the balloon of heroin as evidence and to file a police report on it. Lt. Shober then forwarded this information to Captain Cox, who sent it to the SLCO DA. In October 2009, WJC destroyed the balloon of heroin found by Sgt. Benzon.

In addition to finding heroin in Mr. Jensen's office, investigations revealed other potentially criminal activity by Mr. Jensen. For example, on April 24, 2008, Mr. Jensen returned $583 in cash to the legal counsel of an individual who was booked into jail. When the individual was booked into jail, $1,239 was documented as being taken from him and given to Mr. Jensen for handling. On January 16, 2009, Lt. Shober had to return an additional $656 to the individual from the police budget because no money was left in the original case seizure.

On May 6, 2010, Mr. Jensen was arrested by a SLCO investigator on three felony charges: one second-degree felony for Possession with Intent to Distribute a Controlled Substance and two third-degree felonies for Misuse of Public Monies. Count 1 is based on Mr.

Jensen giving drugs to individuals in exchange for them purchasing a larger amount of drugs at Mr. Jensen's request. Count 2 is based on the mishandling of the $1,239. Count 3 is based on the mishandling of money obtained from the individuals at the traffic stop. Shortly after the arrest, several media articles appeared discussing the events surrounding the arrest.

On December 10, 2010, a preliminary hearing was held in Utah's Second District Court ("Preliminary Hearing"). After an objection by Mr. Jensen's counsel regarding the potential for a witness's testimony to bring future charges against the witness, the witness requested to seek counsel. The court continued the witness's testimony until December 20, 2010. The witness did not appear on December 20, and Utah Second District Judge David M. Connors denied a continuance. After the hearing, Judge Connors dismissed Counts 1 and 3 without prejudice because he found that the State had failed to establish probable cause but had not brought the charges in bad faith. Judge Connors did find probable cause for and bind over Count 2.

On March 24, 2011, Mr. Jensen filed a second Charge of Discrimination with the EEOC alleging retaliation starting in May 2010. The charges were based on the investigation into him by WJC, the three charges that were filed, and continued efforts to pursue the charges, all of which Mr. Jensen claims were in retaliation for his filing the earlier sexual harassment Charge of Discrimination. On April 30, 2012, the EEOC issued a Dismissal and Notice of Rights on Mr. Jensen's 2011 charge.

After the Preliminary Hearing, SLCO DA transferred Mr. Jensen's case to the Davis County District Attorney's Office. At the time of the transfer, Troy Rawlings was the Davis County Attorney. On April 4, 2013, Mr. Rawlings filed an Amended Motion and Order of Dismissal with Prejudice in Mr. Jensen's case.

After resigning from the WJC police department, Mr. Jensen was hired by SilencerCo. SilencerCo fired Mr. Jensen because his bad record with police would tarnish SilencerCo's reputation, but SilencerCo rehired Mr. Jensen within 24 hours. In October 2012, SilencerCo fired Mr. Jensen again for performance reasons. Mr. Jensen then worked for Guitar Center until he walked out after a disagreement with the store manager. After letting that store manager go, Guitar Center hired Mr. Jensen to work there again. Mr. Jensen resigned from his employment with Guitar Center in December 2010. On December 7, 2010, Mr. Jensen got a job offer from a casual friend at Smith Hughes Associates. Mr. Jensen's employment at Smith Hughes was terminated four days after Mr. Jensen was arrested. Smith Hughes assumed that Mr. Jensen was incarcerated because Mr. Jensen had not been to work. The termination letter offered Mr. Jensen an opportunity to return to Smith Hughes once his personal issues were resolved.

Mr. Jensen filed this lawsuit on July 27, 2012, alleging Title VII retaliation, 42 U.S.C. § 1983 retaliation in violation of the First Amendment, 42 U.S.C. § 1983 malicious prosecution, interference with economic relations, fraudulent misrepresentation, negligent supervision, breach of contract, breach of the duty of good faith and fair dealing, and that the Settlement Agreement was unconscionable. On March 11, 2016, Mr. Jensen filed a Motion for Summary Judgment on some of his claims. On March 15, 2016, Defendants filed a Motion for Summary Judgment on all of Mr. Jensen's claims.

## DISCUSSION

Mr. Jensen moves for summary judgment on four of his claims: (1) Title VII retaliation, (2) 42 U.S.C. § 1983 retaliation in violation of the First Amendment, (3) breach of contract, and (4) breach of the duty of good faith and fair dealing. Defendants move for summary judgment on all of Mr. Jensen's claims.

## STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

The initial burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has met its initial burden of demonstrating the absence of a genuine issue of material fact, "the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Sally Beauty Co.*, 304 F.3d at 971 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must "construe the evidence and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," *id.* at 972 (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999)), but conclusory statements and attorney arguments submitted by the nonmoving party do not create a genuine issue of material fact, *see Adler v. Wal-mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998). The non-moving party "may not rely on mere allegations, or denials, contained in its pleadings or briefs" to defeat summary judgment. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002).

## TITLE VII RETALIATION

Under 42 U.S.C. § 2000e-3(a) (2012), it is "an unlawful employment practice for an employer to discriminate against any of his employees" in retaliation against the employee "because he has opposed any practice made an unlawful employment practice" by Title VII. A

burden shifting analysis is used to prove a Title VII claim through circumstantial or indirect evidence. *See Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009). First, the plaintiff must establish a *prima facie* case by demonstrating (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *Argo v. Blue Shield and Blue Cross of KS, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). The *prima facie* burden requires only a "*de minimis* showing" that an adverse action occurred "under circumstances which give rise to an inference of discrimination." *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)). Actionable retaliation may include employer actions that are not directly related to the complainant's employment or that cause harm outside the workplace. *Burlington Northern & Santa Fe Railroad Co. v. White*, 548 U.S. 53, 63 (2006). Examples of such employer actions include hiring a detective to find disreputable information on an employee, *see Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005), or "filing charges against a former employee," *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). Temporal proximity between the protected activity and the adverse action is relevant, but not sufficient, to establish a causal connection. *Uragami v. Home Depot USA, Inc.*, 2005 WL 21772232, at *8 (D. Utah).

The burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Meiners v. University of KS*, 359 F.3d 1222, 1229 (10th Cir. 2004). This is a burden of production, not proof. *Id.*

Finally, the plaintiff must establish that the employer's asserted reasons are pretextual. *Pinkerton*, 563 F.3d at 1064. To determine whether the reason was pretextual, the court looks at

the facts as they appear to the person making the decision. *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011). "Mere conjecture that [an employer] acted out of retaliation will not suffice to establish pretext." *Annett v. University of KS*, 371 F.3d 1233, 1240 (10th Cir. 2004). To show pretext, the plaintiff must demonstrate the "proffered non-discriminatory reason is unworthy of belief." *Pinkerton*, 563 F.3d at 1065. The plaintiff can meet this burden by "producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions of the employer's proffered reason to the point where a reasonable factfinder could find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Id.* (citations omitted).

Before filing a civil action in a federal district court, a person claiming to be aggrieved under Title VII must file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(f). In circumstances such as those that apply in this case, the charge with the EEOC "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "A claim is time barred if it is not filed within these limits." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. "[H]owever, this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel." *Id.*

Equitable tolling doctrines include the "discovery rule," which considers if a plaintiff was not aware of a cause of action due to a defendant's "misleading conduct" or if "exceptional circumstances" would make application of the general rule unjust. *Macquarie Mortgages USA, Inc. v. Premier Title Ins. Agency, Inc.*, 2014 WL 722410, at *4-5 (D. Utah Feb. 24, 2014). Under the "misleading conduct" doctrine, "a plaintiff must demonstrate either (1) that the plaintiff

neither knew nor reasonably should have known of the facts underlying his or her cause of action before the fixed limitations period expired; or (2) that notwithstanding the plaintiff's actual or constructive knowledge of the facts underlying his or her cause of action within the limitations period, a reasonably diligent plaintiff may have delayed in filing his or her complaint until after the statute of limitations expired." *Id.* at *4. Under the "exceptional circumstances" doctrine, Utah courts "apply a balancing test to weigh the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time." *Id.* at *5.

I.      **Timeliness of Mr. Jensen's Title VII Claim**

Defendants argue that most of the actions that Mr. Jensen alleges are retaliatory are time barred or outside of the court's subject matter jurisdiction. First, Defendants argue that any alleged retaliation that occurred before or that had begun by April 29, 2009, is time barred by the Settlement Agreement, which includes a provision waiving all claims known or unknown at the time of the signing of the agreement. Second, Defendants argue that the court only has subject matter jurisdiction over alleged discrete acts of retaliation that occurred within the 300-day window prior to the filing of the Charge of Discrimination with the EEOC. In other words, Defendants argue that any discrete acts of alleged retaliation that occurred before May 28, 2010, or after March 24, 2011, are outside of the court's subject matter jurisdiction.

Mr. Jensen argues that his 2011 Charge of Discrimination was timely because he only knew about Defendants' retaliation after his May 6, 2010, arrest and subsequent discovery and because equitable tolling should apply. Mr. Jensen argues that he filed his March 24, 2011, Charge of Discrimination within 300 days of becoming aware that Defendants retaliated against him. Mr. Jensen also argues that equitable tolling should apply because Defendants misled him

and concealed the criminal investigation from him, which created exceptional circumstances that would make it unjust to strictly apply the statute of limitations.

When analyzing Title VII's filing requirements, the "most salient source for guidance is the statutory text." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Although Mr. Jensen argues that the time period for filing a Charge of Discrimination with the EEOC should be calculated from the time that he knew about Defendants' retaliatory acts, that interpretation is inconsistent with the statutory text. According to the terms of the statute, the time period for filing a Charge of Discrimination with the EEOC should be calculated from the time that the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("A party . . . must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it."). Therefore, the court concludes that any discrete acts that occurred outside of the 300-day window prior to Mr. Jensen's filing of the Charge of Discrimination with the EEOC are time barred unless equitable tolling applies.

The court concludes that genuine issues of material fact exist as to whether equitable tolling should apply under the "misleading conduct" doctrine. Although the facts seem to establish that Mr. Jensen was aware of an investigation being conducted about his report writing, the parties dispute the extent of Mr. Jensen's knowledge of that investigation. For example, the parties dispute whether Mr. Jensen was misled about Lt. Shober's involvement with the drugs found in Mr. Jensen's former office. Therefore, the court concludes that summary judgment is not appropriate on the issue of whether equitable tolling should apply to Mr. Jensen's otherwise untimely retaliation claims.

## II.  Prima Facie Case

Mr. Jensen argues that he has established his *prima facie* case for Title VII retaliation. First, Mr. Jensen claims that he engaged in protected opposition to discrimination by filing both informal and formal complaints with WJC related to alleged sexual harassment and gender discrimination. Defendants do not dispute that Mr. Jensen's actions are protected activities.

Mr. Jensen next argues that WJC treated him differently than other officers who engaged in similar illegal conduct and that a reasonable employee would have found that the criminal prosecution and eventual arrest were materially adverse actions by WJC because they would "dissuade[] a reasonable worker from making [] a charge of discrimination." *Burlington Northern*, 548 U.S. at 67-68. Defendants argue that there was no adverse action by WJC because WJC did not do anything to hinder Mr. Jensen from obtaining or keeping a job.

Finally, Mr. Jensen argues that a causal connection exists because the materially adverse actions began almost immediately after the protected activity and because Lt. Shober was angry about Mr. Jensen's complaints of discrimination. According to Defendants, WJC began a non-criminal IA into Mr. Jensen *before* he complained of harassment and transferred it to the AG *before* he filed his 2008 Charge of Discrimination with the EEOC. Once the IA was transferred to the AG, Defendants argue that WJC no longer had any control or influence over the matter. Therefore, Defendants argue that there was no causal connection.

Because Mr. Jensen is only required to make a *de minimis* showing to meet his burden, the court assumes without deciding that Mr. Jensen can establish a *prima facie* case that Defendants engaged in adverse actions in retaliation against Mr. Jensen for filing his Charge of Discrimination. Mr. Jensen alleges that Defendants engaged in several actions that contributed to the criminal prosecution and eventual arrest of Mr. Jensen. Mr. Jensen also points to the temporal

proximity between the Charge of Discrimination and the allegedly adverse actions and to Lt.

Shober's reaction to the Charge of Discrimination to try to establish a causal connection.

### III.     Legitimate, Non-Discriminatory Reason and Pretext

As a legitimate, non-discriminatory reason for their allegedly retaliatory actions,

Defendants argue that their actions were performed as part of their routine duties or as required

in support of the independent investigations being performed by the AG or the SCLO DA. To

establish pretext, Mr. Jensen argues that WJC treated a similarly situated employee differently

than it treated Mr. Jensen and treated Mr. Jensen differently for the same alleged policy mistakes

before and after his Charge of Discrimination.

The court finds that genuine issues of material fact exist as to whether Defendants'

proffered reasons for their allegedly adverse actions were pretextual. Relying on contradictory

evidence, the parties dispute whether Lt. Shober and other employees at WJC were simply

performing routine duties or were actively seeking to retaliate against Mr. Jensen. The parties

also dispute whether the similarly situated employee was truly similarly situated and whether

legitimate reasons existed to allegedly treat Mr. Jensen differently before and after his Charge of

Discrimination. Given these genuine issues of material fact, the court concludes that neither

party is entitled to summary judgment on Mr. Jensen's Title VII retaliation claim.

### SECTION 1983 RETALIATION IN VIOLATION OF THE FIRST AMENDMENT

"Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or

immunities secured by the Constitution and laws' by any person acting under color of state law."

*Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (quoting 42 U.S.C. § 1983). "[T]he

First Amendment protects a public employee's right, in certain circumstances, to speak as a

citizen addressing matters of public concern." *Leverington v. City of Colorado Springs*, 643 F.3d

719, 723 (10th Cir. 2011). In "public-employee, free-speech cases," courts apply a "five step inquiry which we now refer to as the '*Garcetti/Pickering*' analysis." *Id.* at 724 (citation omitted). The five-step inquiry requires courts to consider the following:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Leverington*, 643 F.3d at 724 (citation omitted).

Even though the First Amendment protects a public employee's right to speak on matters of public concern, "[a] municipality cannot be held liable for its officers' actions under § 1983 unless those actions were caused by a policy or custom of the municipality." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007). A municipal policy is a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers" or "[a]n act committed by an official who has been delegated the power of 'establishing final policy.'" *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "A 'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such a widespread practice as to have the force of law." *Kojima v. Lehi City*, No. 2:13-CV-755-EJF, 2015 WL 4276399, at *6 (D. Utah) (citing *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003)). Plaintiffs establish a custom by putting forth evidence of "a continuing, persistent and widespread practice" by municipal employees, such as "that similarly situated individuals were mistreated by the municipality in a similar way." *Id.* (citations omitted).

Similar to Mr. Jensen's Title VII claim, Defendants do not appear to argue that Mr. Jensen's complaints were made pursuant to his official duties nor do Defendants dispute that Mr.

Jensen's speech was a matter of public concern. Instead, Defendants argue that no causal connection exists between Mr. Jensen's speech and Defendants' allegedly adverse action and that WJC did not have a policy or custom that caused any allegedly improper action. Specifically, Defendants argue that the IA began before Mr. Jensen's speech and that no evidence exists that a final policymaker ordered the alleged retaliatory action or that WJC had a policy or custom of engaging in such conduct. Mr. Jensen argues that both initiating investigation into his conduct and filing charges against him constitute adverse actions that were motivated by Mr. Jensen's protected speech. Mr. Jensen also argues that WJC did have a policy or custom of retaliating against employees who exercise, or attempt to exercise, their legal rights because multiple employees in several WJC departments retaliated against him, including final policymakers, and that similar situations have happened with other WJC employees.

Like Mr. Jensen's claim for Title VII retaliation, the court concludes that genuine issues of material fact exist regarding Mr. Jensen's § 1983 claim for retaliation in violation of the First Amendment. As mentioned above, the parties rely on contradictory evidence to dispute whether Lt. Shober and other employees at WJC were simply performing routine duties or were actively seeking to retaliate against Mr. Jensen. The parties also dispute whether final policymakers at WJC committed adverse actions that they would not have committed if Mr. Jensen had not filed a Charge of Discrimination and whether WJC has treated similarly situated employees in a similar way. Therefore, the court concludes that neither party is entitled to summary judgment on Mr. Jensen's claim for § 1983 retaliation in violation of the First Amendment.

### BREACH OF CONTRACT AND OF DUTY OF GOOD FAITH AND FAIR DEALING

The elements of a prima facie case for breach of contract are: (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4)

damages. *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001) (citations omitted). The duty of good faith and fair dealing inheres in every contract but cannot create "new, independent rights or duties not agreed upon by the parties." *Tomlinson v. NCR Corp.*, 345 P.3d 523, at ¶ 32 (Utah 2014). In rare circumstances, Utah courts have allowed plaintiffs to recover damages for emotional distress in breach-of-contract cases. *See Cabaness v. Thomas*, 232 P.3d 486, 507-508 (Utah 2010). The Utah Supreme Court has held that "damages related to emotional distress or mental anguish" are recoverable on a breach of contract claim "when such damages were both a foreseeable result of the breach of contract and *explicitly* within the contemplation of the parties at the time the contract was entered into." *Id.* at 508 (emphasis in original).

Both Mr. Jensen's breach-of-contract claim and his breach-of-covenant-of-good-faith-and-fair-dealing claim are based on Defendants alleged retaliatory actions, which are prohibited by the terms of the Negotiated Settlement Agreement. As already mentioned, the court concludes that genuine issues of material facts exist as to whether Defendants' actions were retaliatory. Therefore, neither party is entitled to summary judgment on Mr. Jensen's claims for breach of contract and breach of the covenant of good faith and fair dealing.

Mr. Jensen also claims that he is entitled to emotional distress damages because the emotional distress that he experienced naturally flowed from Defendants' breach of the contract, and that those damages were in the contemplation of the contracting parties because his initial informal and formal complaints included emotional distress. But Defendants argue that none of the factors here would warrant a departure from the general rule that emotional distress damages are not available on contract claims.

In terms of whether Mr. Jensen is entitled to emotional distress damages, the court concludes that Mr. Jensen has not shown that his breach of contract claim meets the criteria

necessary for the court to depart from the general rule that emotional distress damages are not available on contract claims. Utah courts allow emotional distress damages on contract claims only if the damages are a foreseeable result of the breach and the damages are explicitly within the contemplation of the parties at the time the contract was entered into. Although Mr. Jensen has argued that the emotional distress damages were foreseeable, he has not shown that they were explicitly within the contemplation of the parties at the time the Settlement Agreement was entered into. In his Motion for Summary Judgment, Mr. Jensen states, "The breach of WJC's duties were explicitly within the contemplation of the parties at the time the settlement agreement was signed." Pls.' Mot. for Summ. J. 43, ECF No. 146. However, the standard is not that the *breach* of WJC's duties be explicitly within the contemplation of the parties but that the *emotional distress damages* be explicitly within the contemplation of the parties. Given that Mr. Jensen has provided no facts that the emotional distress damages were explicitly within the contemplation of the parties at the time the Settlement Agreement was entered into, the court concludes, as a matter of law, that Mr. Jensen is not entitled to emotional distress damages on his breach of contract claim.

## SECTION 1983 MALICIOUS PROSECUTION

"Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting under color of state law." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (quoting 42 U.S.C. § 1983). By its terms, Section 1983 "applies not only to a person who 'subjects,' but also to any person who '*causes to be subjected* . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Id.* at 1292 (quoting 42 U.S.C. § 1983) (emphasis in original). In order to determine whether a constitutional right has been

violated, courts use "the common law of torts as a 'starting point.'" *Id.* at 1286 (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)). "[A]lthough the common law elements provide the 'starting point' for the analysis of a § 1983 malicious prosecution claim, the ultimate question is whether plaintiff can prove a constitutional violation." *Id.* at 1288 (citing *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)).

In this case, Mr. Jensen argues that Defendants violated his Fourth Amendment right to be free from unreasonable seizures. *See* U.S. Const. amend. IV. The most closely analogous common law claim to Mr. Jensen's allegations is a claim for malicious prosecution. The elements of a § 1983 malicious prosecution claim under the common law are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007). Police officers can cause a plaintiff's continued confinement or prosecution by "conceal[ing] and misrepresent[ing] material facts to the district attorney" even though "the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions." *Pierce*, 359 F.3d at 1292. In pre-trial cases, such as this one, an action is terminated in favor of the plaintiff only if the case ended in a manner that indicates that the accused is innocent. *See, e.g.*, *Hilfirty v. Shipman*, 91 F.3d 573, 580 (3d Cir. 1996) ("[O]nly terminations that indicate the accused is innocent ought to be considered favorable." (citing *Restatement (Second) of Torts* § 660 cmt. a)). To prove the third element when it is alleged that exculpatory evidence was withheld, "the existence of probable cause is determined by examining the evidence 'as if omitted information had been included' and inquiring whether probable cause existed in light of all the evidence,

including the omitted information." *Pierce*, 359 F.3d at 1293. A finding of probable cause at a preliminary hearing in Utah may break the "chain of causation" between a wrongful arrest and the remainder of a malicious prosecution claim "absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (citation omitted).

In terms of WJC's liability for malicious prosecution, "[a] municipality cannot be held liable for its officers' actions under § 1983 unless those actions were caused by a policy or custom of the municipality." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007). A municipal policy is a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers" or "[a]n act committed by an official who has been delegated the power of 'establishing final policy.'" *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "A 'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such a widespread practice as to have the force of law." *Kojima v. Lehi City*, No. 2:13-CV-755-EJF, 2015 WL 4276399, at *6 (D. Utah) (citing *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003)). Plaintiffs establish a custom by putting forth evidence of "a continuing, persistent and widespread practice" by municipal employees, such as "that similarly situated individuals were mistreated by the municipality in a similar way." *Id.* (citations omitted).

In this case, Mr. Jensen argues that Defendants caused his continued prosecution by intentionally withholding exonerating information, which was then omitted from the information and arrest warrant. According to Mr. Jensen, the omitted exonerating information includes the suspect chain of custody of confiscated money and Mr. Jensen's alibi, both of which make the remainder of the evidence in the information and arrest warrant misleading. Mr. Jensen also

argues that final policymakers encouraged and caused Mr. Jensen's criminal prosecution and that WJC had a custom of encouraging and causing criminal prosecutions in retaliation against its employees. Defendants argue that they did not cause Mr. Jensen's continued prosecution, that the action did not terminate in Mr. Jensen's favor, and that the finding of probable cause in the preliminary hearing broke the chain of causation between the arrest and the remainder of the malicious prosecution claim. Defendants also argue that WJC did not have a policy or custom of malicious prosecution.

The court concludes that genuine issues of material fact exist as to whether Defendants are liable for malicious prosecution. Construing the evidence in the light most favorable to Mr. Jensen, a reasonable jury could conclude that Defendants encouraged the prosecution by concealing material facts and that revealing the exculpatory information, which the Defendants allegedly intentionally omitted from the information and arrest warrant, would prevent the finding of probable cause for Mr. Jensen's arrest or continued prosecution. Finally, as already mentioned above, the court also concludes that genuine issues of material fact exist regarding whether final policymakers at WJC committed retaliatory acts.

Therefore, the court concludes that Defendants are not entitled to summary judgment on Mr. Jensen's malicious prosecution claim.

## GOVERNMENTAL IMMUNITY ACT OF UTAH

The Governmental Immunity Act of Utah ("UGIA") provides a general grant of immunity to governmental entities and their employees with specific waivers of immunity that are subject to exceptions. *See Hansen v. Salt Lake Cty.*, 794 P.2d 838, 842 (Utah 1990) ("[T]he Act was structured such that immunity was *granted generally* and *waived* (and retained by exception to waiver) *specifically*." (emphasis in original)). Therefore, the immunity analysis

under the UGIA requires a court to consider three questions: "(1) whether the activity is a governmental function for which blanket immunity has been granted in [the UGIA]; (2) whether blanket immunity is waived in another section of the [UGIA]; and (3) if immunity has been waived, whether there is an exception to the waiver that preserves immunity." *Dettle v. Richfield City*, No. 2:13-CV-357-DAK, 2014 WL 4354424, at *9 (D. Utah Sept. 2, 2014) (citing *Ledfors v. Emery School Dist.*, 849 P.2d 1162, 1164 (Utah 1993)). When considering the second question as to whether immunity has been waived, a court should take note that "there are no provisions in the [UGIA] waiving immunity for intentional tort causes of action." *Id.*

Under the specific terms of the UGIA, "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function" unless the UGIA waives immunity for the specific cause of action. Utah Code Ann. § 63G-7-201(1). The UGIA specifically waives immunity "as to any contractual obligation" and "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment" subject to Section 201(4) of the UGIA. Utah Code Ann. §§ 63G-7-301(1)(a) and (i). Section 201(4) provides a list of exceptions in which a governmental entity does not waive immunity "for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code Ann. § 63G-7-201(4). Under that section, governmental entities retain, and do not waive, immunity "if the injury arises out of or in connection with, or results from," among other things, "malicious prosecution"; "the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause"; or "a misrepresentation by an employee whether or not the misrepresentation is negligent or intentional." Utah Code Ann. §§ 63G-7-201(4)(a), (e), and (f).

In addition to establishing and waiving immunity for governmental entities and their employees, the UGIA also contains a requirement for filing a notice of claim for "any claim against a governmental entity, or against an employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority." Utah Code Ann. § 63G-7-402. The notice of claim must be filed "within one year after the claim arises," and failure to file a notice of claim results in the claim being barred. *Id.* (stating that a claim against a governmental entity is "barred unless notice of that claim is filed . . . within one year after the claim arises"). A district court can properly dismiss untimely claims with prejudice. *Yates v. Vernal Family Health Ctr.*, 617 P.2d 352, 354 (Utah 1980). A claim arises when "a claimant knew, or with the exercise of reasonable diligence should have known: (i) that the claimant had a claim against the governmental entity or its employee; and (ii) the identity of the governmental entity or the name of the employee." Utah Code Ann. § 63G-7-401(b). The claimant has the "burden to prove the exercise of reasonable diligence." Utah Code Ann. § 63G-7-401(c). The notice-of-claim provisions do not apply to "[a]ctions arising out of contractual rights or obligations." Utah Code Ann. § 63G-7-301(1)(b).

Defendants argue that several of Mr. Jensen's causes of action are barred by the UGIA's immunity and timeliness provisions. Specifically, Defendants argue that both WJC and Lt. Shober are immune from suits for interference with economic relations, fraudulent misrepresentation, and negligent supervision and that each of those claims is barred because the notice of claim was filed more than one year after the claim arose. Mr. Jensen does not dispute that Defendants' alleged actions are governmental functions that fall within the UGIA, but he argues that the UGIA waives immunity for each of those claims because each of them arises

from contractual obligations. Mr. Jensen also argues that each of the claims is timely based on the time at which Mr. Jensen knew that he had a claim against Defendants.

## I. Fraudulent Misrepresentation

Because Mr. Jensen does not dispute that the Defendants' actions fall within the UGIA, the court will proceed to analyze whether the UGIA waives immunity for the relevant claims. In terms of fraudulent misrepresentation, Mr. Jensen claims that WJC induced him to enter into the Settlement Agreement by representing that it would comply with its promises in the Settlement Agreement, even though WJC knew its representations were false or it made them recklessly. Therefore, Mr. Jensen argues that the UGIA waives immunity for this claim because it arises from contractual obligations.

Although Defendants allegedly made the fraudulent misrepresentations in an attempt to induce Mr. Jensen to sign the contract, the fraudulent misrepresentations themselves did not arise from or violate any contractual obligations. In fact, at the time the allegedly fraudulent misrepresentations were made, no contract was in existence. Therefore, the court concludes that Mr. Jensen's claim for fraudulent misrepresentation does not fall within the waiver of sovereign immunity as to any contractual obligation.

As an intentional tort, fraudulent misrepresentation does not fall within any other waiver of immunity under the UGIA because "there are no provisions in the Act waiving immunity for intentional tort causes of action." *Dettle v. Richfield City*, No. 2:13-CV-357-DAK, 2014 WL 4354424, at *9 (D. Utah 2014). To the extent that Mr. Jensen argues that the fraudulent misrepresentation claim falls within the waiver of immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment," Utah Code Ann. §§ 63G-7-301(1)(i), the court concludes that the claim falls within the exception to

that waiver for a "misrepresentation by an employee whether or not the misrepresentation is negligent or intentional," Utah Code Ann. §§ 63G-7-201(4)(f). Therefore, the court concludes that Defendants are entitled to summary judgment on Mr. Jensen's fraudulent misrepresentation claim because the UGIA grants Defendants immunity as to this claim.

## II.     Negligent Supervision

Mr. Jensen also claims that Defendants have waived immunity as to his negligent supervision claim because that claim also arises from the Settlement Agreement. Mr. Jensen's negligent supervision claim is based on WJC's alleged failure to reasonably supervise its employees, including Lt. Shober, which allowed the employees to allegedly participate in a retaliatory investigation and encourage the prosecution of Mr. Jensen.

Even though Mr. Jensen argues that the negligent supervision claim arises from a contract, the Settlement Agreement does not have a provision requiring WJC to adequately supervise its employees or to refrain from negligent supervision. Although some of the conduct that allegedly resulted from the negligent supervision is prohibited by the Settlement Agreement, the obligation to refrain from negligent supervision itself is not a contractual obligation. Because the obligation to refrain from negligent supervision is not a contractual obligation, it is not subject to the waiver of immunity for contractual obligations.

Although the court concludes that the obligation to refrain from negligent supervision is not a contractual obligation, it is a negligent act or omission, and the UGIA waives immunity for negligent acts or omissions of an employee committed within the scope of employment. However, the UGIA provides an exception to that waiver of immunity "if the injury arises out of or in connection with, or results from" any one of a number of activities. Utah Code Ann. § 63G-7-201(4). Included in the list of excepted activities are several that are relevant to Mr. Jensen's

claim, including "false imprisonment, false arrest, malicious prosecution, . . . abuse of process, . . . or deceit"; "a misrepresentation by an employee whether or not the misrepresentation is negligent or intentional"; "the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause"; or "the incarceration of a person in a state prison, county or city jail, or other place of legal confinement." Utah Code Ann. §§ 63G-7-201(4)(b), (e), (f), and (j).

Mr. Jensen's claim for negligent supervision arises out of or in connection with or results from the underlying actions of the employees that were allegedly negligently supervised, all of which fall within the exception to the waiver of immunity for negligent acts or omissions. Even construing the evidence in the light most favorable to Mr. Jensen, Defendants actions fall within the exception to the waiver of immunity for negligent acts or omissions. Therefore, the court concludes that Defendants are entitled to summary judgment on the negligent supervision claim because they are immune as to that claim.

### III.      Intentional Interference with Economic Relations

Mr. Jensen claims that WJC intentionally interfered with his economic relations by falsely and repeatedly telling potential employers that he was fired from WJC and by pursuing bogus criminal allegations against him. Intentional interference with economic relations is an intentional tort that "Utah law recognizes [as] a common law cause of action." *Ferguson v. Williams & Hunt, Inc.*, 221 P.3d 205, 216 (Utah 2009). To establish a claim for intentional interference with economic relations in Utah, "the plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Id.* (citations omitted).

Mr. Jensen argues that Defendants are not immune from his claim for intentional interference with economic relations because the UGIA waives immunity for contractual obligations and because Defendants are contractually obligated, under the terms of the Settlement Agreement, to provide neutral references for Mr. Jensen and to only disclose the fact and dates of his employment with WJC. However, the fact that a contract exists that prohibits a defendant from taking actions that would result in interference with a plaintiff's economic relations does not convert a claim for intentional interference with economic relations into a contract claim. The duty or obligation for Defendants not to intentionally interfere with Mr. Jensen's economic relations arises from the common law and is, therefore, not a contractual obligation, even if, as is the case here, a separate claim for breach of contract may exist for the same actions. *See, e.g.*, *Ross v. Consumer Power Co.*, 363 N.W.2d 641, 674 (1984) (recognizing in a governmental-immunity analysis that identical tort and contract allegations should be analyzed differently if one of the claims "also alleges that plaintiffs contracted and agreed with defendants" regarding the obligations). Therefore, the court concludes that the UGIA's waiver of immunity for contractual obligations does not apply to Mr. Jensen's claim for intentional interference with economic relations.

If the intentional interference with economic relations claim does not qualify as a contractual obligation, which the court concludes that it does not, then no other provision of the UGIA waives immunity as to the cause of action. "[T]here are no provisions in the Act waiving immunity for intentional tort causes of action." *Dettle v. Richfield City*, No. 2:13-CV-357_DAK, 2014 WL 4354424, at *9 (D. Utah Sept. 2, 2014). The most relevant waiver of immunity in the UGIA is a waiver "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment," but that waiver is limited to negligent

acts or omissions and does not extend to intentional acts or omissions. Utah Code Ann. § 63G-7-301(2)(i). Therefore, the court concludes that Defendants are entitled to summary judgment on the Mr. Jensen's intentional interference with economic relations claim.

## UNCONSCIONABILITY

Defendants argue that there is no merit to Mr. Jensen's contentions that the Settlement Agreement was both substantively and procedurally unconscionable. Whether a contract is unconscionable, either procedurally or substantively, is a question of law. *Sosa v. Paulos*, 924 P.2d 357, 360 (Utah 1996). Substantive unconscionability "focuses on the agreement's contents" and considers "whether its terms are so one-sided as to oppress or unfairly surprise an innocent party" or whether there is "an overall imbalance in the obligations and rights imposed by the bargain." *Id.* at 360-61. "[T]erms of the contract should be considered according to the mores and business practices of the time and place." *Id.* at 361. Procedural unconscionability "focuses on the formation of the agreement, i.e., the manner in which the contract was negotiated and the circumstances of the parties." *Id.* at 360.

Based on the undisputed facts, the court concludes that the Settlement Agreement is not unconscionable, either substantively or procedurally. Under the terms of the Settlement Agreement, Mr. Jensen agreed to resign his employment with WJC and agreed not to institute a lawsuit based on his previously filed Charge of Discrimination. In exchange, WJC agreed to pay Mr. Jensen $80,000 and to provide Mr. Jensen with a neutral reference. The terms of the Negotiated Settlement Agreement also prohibit WJC from retaliating against Mr. Jensen and require WJC to abide by federal law. The court does not consider these provisions to be oppressively or unfairly one-sided or to create an overall imbalance in the obligations and rights imposed on the parties. In terms of the manner in which the contract was negotiated, Mr. Jensen

was represented by counsel throughout the negotiation of the Settlement Agreement, and each party had opportunities to review and comment on the terms of the agreement before the agreement was signed. Therefore, the court concludes that Defendants are entitled to summary judgment that the Settlement Agreement is not unconscionable.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Mr. Jensen's Motion for Partial Summary Judgment is DENIED. Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Specifically, Defendants' Motion for Summary Judgment is granted with respect to Mr. Jensen's claims for unconscionability (Fifth Cause of Action), fraudulent misrepresentation (Sixth Cause of Action), negligent supervision (Seventh Cause of Action), and intentional interference with economic relations (Eighth Cause of Action). The court also concludes as a matter of law that Mr. Jensen is not entitled to emotional distress damages on his contract claims. But Defendants' Motion for Summary Judgment is denied with respect to Mr. Jensen's other causes of action.

DATED this 11th day of August, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge