# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| AARON JENSEN,<br><br>    Plaintiff,<br>vs.<br><br>WEST JORDAN CITY, a Utah municipal corporation,<br><br>    Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:12-CV-736-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant West Jordan City's ("WJC's") Motion for Reconsideration and Clarification of the Court's Ruling on Tolling of Plaintiff's Title VII Claim, WJC's and Plaintiff Aaron Jensen's Objections to Pretrial Disclosures, and supplemental briefing pursuant to the court's instruction during the May 23, 2017, hearing. The court concludes that a hearing would not significantly aid its determination of the issues presented in these documents. Accordingly, the court issues the following Memorandum Decision and Order based on the written submissions of the parties and the law and facts relevant to the pending issues.

## STANDARD OF REVIEW

Although "[a] motion for reconsideration is not specifically provided for in the rules of civil procedure, . . . it is within the court's discretion to reconsider a previous order." *Baer v. Salt Lake City Corp.*, No. 2:13-CV-336, 2016 WL 3546256, at *1 (D. Utah June 23, 2016). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

## EFFECTIVE DATE OF SETTLEMENT AGREEMENT

The parties disagree as to the effective date of the agreement settling Mr. Jensen's sexual harassment claims with WJC. The date is relevant for two major reasons: the effective date of the agreement determines what communications will be excluded from trial as mediation communications, and, as part of the agreement, Mr. Jensen released WJC from any claims as of the date of the agreement. Mr. Jensen notes that, under Utah law, the practice of parties to "memorialize in a more formal document agreements created in mediation . . . does not preclude the enforcement or finality of the agreement created in mediation so long as the terms are 'sufficiently definite as to be capable of being enforced.'" *Patterson v. Knight*, 391 P.3d 1075, 1078 (Utah 2017). Based on this law, Mr. Jensen argues that the settlement agreement between Mr. Jensen and WJC was made effective on the date that the parties agreed to sufficiently definite terms, which Mr. Jensen argues occurred before April 29, 2009, when the written agreement was signed.

The court agrees with Mr. Jensen that, under Utah law, an enforceable agreement can be created through mediation communications without a signed document. However, once an agreement reached through mediation is memorialized into a signed document, the signed document becomes the enforceable agreement and supersedes any other related oral or written negotiations, even if those negotiations would have been sufficient in isolation to create an enforceable agreement. *See, e.g.*, *Harrison v. Fred S. James, P.A., Inc.*, 558 F. Supp. 438, 443 (E.D. Pa. 1983) ("Under the [parole evidence] rule, any oral representations made during the negotiation stage are merged in and superceded by the written agreement."). Mr. Jensen is essentially attempting to contradict terms of the written contract, in this case the effective date, through references to prior negotiations, which Utah law does not allow. *Tangren Family Trust*

*v. Tangren*, 182 P.3d 326, 330 (Utah 2008) ("[T]he parol evidence rule . . . operates . . . to exclude evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an *integrated* contract.") Therefore, whether the communications between Mr. Jensen and WJC would have been sufficient to create an enforceable agreement at some point before April 29, 2009, is irrelevant because the agreement was memorialized in a signed document on April 29, 2009. Therefore, in this case, the effective date of the enforceable settlement agreement is April 29, 2009.

Having concluded that the effective date of the settlement agreement is April 29, 2009, the court also grants WJC's Motion in Limine to Exclude Mediation Communications [Docket No. 231]. Specifically, the court excludes from evidence all communications between the parties that meet the definition of "mediation communications," as that term is defined in Utah's Uniform Mediation Act, that occurred on or before April 29, 2009. *See* Utah Code Ann. § 78B-10-102(2) (defining "mediation communication" as "conduct or a statement, whether oral, in a record, verbal, or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator"). The court further notes that, pursuant to the terms of the settlement agreement, April 29, 2009, represents the date before which Mr. Jensen has released all claims against WJC.

## TOLLING OF TITLE VII CLAIMS

On August 11, 2016, the court issued a Memorandum Decision and Order denying Mr. Jensen's Motion for Partial Summary Judgment and granting in part and denying in part WJC's Motion for Summary Judgment. In that Memorandum Decision and Order, the court concluded that, although "discrete acts that occurred outside of the 300-day window prior to Mr. Jensen's

filing of the Charge of Discrimination with the EEOC are time barred, . . . genuine issues of material fact exist as to whether equitable tolling should apply under the 'misleading conduct' doctrine." Mem. Decision and Order, at 11, Aug. 11, 2016, ECF No. 186. On May 1, 2017, WJC filed a Motion for Reconsideration and Clarification of the Court's Ruling on Tolling of Mr. Jensen's Title VII Claim. In its motion, WJC argues that the court applied the wrong tolling law and requests that the court clarify the evidentiary basis for the court's conclusion that genuine issues of material fact exist as to whether equitable tolling should apply. Specifically, WJC argues that the court applied Utah's "misleading conduct" doctrine for equitable tolling when, in the Tenth Circuit, "a Title VII time limit will be tolled *only* if there has been active deception of the claimant regarding procedural requirements." *Jarrett v. U.S. Sprint Commc'ns Co.*, 22 F.3d 256, 260 (10th Cir. 1994).

Although the court is aware of arguments against applying equitable tolling in this case and understands the arguments regarding the appropriate standard for equitable tolling, for purposes of admitting evidence at trial, the court will assume that equitable tolling applies. In other words, the court will not exclude any evidence based solely on the objection that it is outside of the 300-day window and equitable tolling should not apply. The court will clarify the appropriate standard to apply for equitable tolling in the court's instructions for the jury, which the parties and the court will discuss in the jury instruction conference that will take place before the final day of trial.

### FINAL POLICYMAKERS

In its supplemental briefing, WJC asks the court to determine the question of law of whether WJC's Chief of Police or City Attorney has final policymaking authority regarding WJC's conduct related to Mr. Jensen's claims. "'[F]inal policymaking authority' is a legal issue

4

to be determined by the court based on state and local law." *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)). In the Tenth Circuit, to determine whether an individual is a "final policymaker," a court should consider the following three elements: "(1) whether the official is meaningfully constrained 'by policies not of that official's own making'; (2) whether the official's decisions are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Id.* at 448 (citations omitted).

WJC argues that the West Jordan City Code explicitly confers policymaking authority on the City Council, West Jordan City Code § 1-6-5 ("As the legislative branch of city government, the city council . . . establishes policy"), and tasks the City Manager with executing those policies and ensuring that the executive and administrative activities of WJC are "consistent with and fulfill the city council's policies," West Jordan City Code §§ 1-6-6, 1-7D-4(B). WJC further argues that no final policymaking authority is delegated to department heads, such as the Chief of Police or the City Attorney, because the policies and procedures manuals developed and maintained by the department heads must have the "approval of the city manager." West Jordan City Code § 1-7C-2(B)(2). But Mr. Jensen argues that the West Jordan City Code also provides that department heads "shall," among other things, "[e]xercise authority over al subordinates," West Jordan City Code § 1-7C-2(B), and that the City Manager can delegate to the department heads any duties the city manager "shall deem appropriate," West Jordan City Code §§ 1-7-C1, 1-8-B2, F2. The West Jordan City Code further states that "[t]he designation of a duty or responsibility [to a department head] shall constitute such authority as is necessary to effect the duty or responsibility so imposed." West Jordan City Code § 1-7C-2(C).

Both parties seem to agree that the City Manager is a final policymaker of WJC. The court agrees. The court also agrees with Mr. Jensen that the Chief of Police and the City Attorney for WJC are both final policymakers for purposes of the policy decisions at issue in this case. Although some of the decisions of the WJC Chief of Police and City Attorney are subject to approval by the City Manager, the types of decisions at issue in this case, such as the decision to initiate an internal investigation into personnel of the police department, the decision to pass off the investigation to an outside agency, and the decision to provide or not provide evidence to outside investigators, are the types of decisions over which the WJC Chief of Police and the City Attorney are likely to have final policymaking authority that is not subject to meaningful review.

## PROBABLE CAUSE

The court concluded in a previous Memorandum Decision and Order [Docket No. 186] that genuine issues of material fact exist as to whether a reasonable jury would find probable cause for Mr. Jensen's arrest and continued prosecution in light of all material facts and potentially exculpatory information. Despite the fact that the court recognized the existence of genuine issues of material fact, WJC asks the court to determine, as a matter of law, whether there was probable cause accepting Mr. Jensen's allegations as true. "[T]he existence of probable cause is generally a mixed question of law and fact." *Roberts v. Cottonwood Heights City*, No. 2:15-CV-839 TS, 2016 WL 2344219, at *3 (D. Utah May 3, 2016) (unpublished). "If the facts are undisputed, the question of probable cause is one for the court to decide as a matter of law. If the facts tending to establish the existence or want of existence of probable cause are in dispute, it becomes the duty of the trial court to submit the question to the jury." *Webb v. Airlines Reporting Corp.*, 57 F.3d 1081, at *2 (10th Cir. 1995) (unpublished) (citation omitted). Because

the court finds that facts related to probable cause are in dispute, the court will perform its duty of submitting the question to the jury.

## EVIDENTIARY OBJECTIONS

Both parties have raised objections to witnesses and exhibits in the other party's pretrial disclosures. The court has already decided some of those objections through its rulings on the parties' motions in limine, and the court will not reconsider those rulings. Those objections have been preserved on the record and do not need to be repeated. Some of the objections have also been rendered moot by the Pretrial Order that was agreed to by both parties. The court will decide all other objections raised by the parties during the trial when the evidence is presented with the benefit of the foundation and the context available at the trial.

## CONCLUSION

Based on the above reasoning, WJC's Motion in Limine to Exclude Mediation Communications [Docket No. 231] is GRANTED, and WJC's Motion for Reconsideration and Clarification of the Court's Ruling on Tolling of Plaintiff's Title VII Claim [Docket No. 251] is DENIED. The court will clarify the appropriate standard for equitable tolling on that claim in the jury instructions. The court further concludes that the effective date of the settlement agreement between the parties is April 29, 2009, that WJC's Chief of Police and City Attorney are final policymakers for purposes of this action, and that the question of probable cause will be submitted to the jury.

DATED this 1st day of June, 2017.

BY THE COURT:

_Dale A. Kimball_
DALE A. KIMBALL
United States District Judge